No. 111,115

**IN** THE COURT OF APPEALS OF THE STATE OF KANSAS

MELISSA ANNE DESTER,
*Appellee*,

v.

CHAD MICHAEL DESTER,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Protection from Stalking Act, K.S.A. 60-31a01 *et seq.*, provides that it is to be liberally construed to protect victims of stalking and to facilitate access to judicial protection for those victims, whether they are represented by counsel or proceeding pro se.

2.

To determine whether a statute applies retroactively or prospectively, the general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the legislature intended the statute to operate retrospectively or (2) the change is procedural or remedial in nature, not substantive.

3.

Procedural laws deal with the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights. Substantive laws establish the rights and duties of parties. There is no vested right in any particular remedy or method of procedure.

1

4.

The 2012 amendments to the Protection from Stalking Act deal with the remedies portion of the Act, which sets forth the type of relief a victim of stalking may obtain from the court and the procedure for doing so, and are procedural or remedial in nature.

5.

Amendments which are procedural or remedial may not be applied retrospectively if they would prejudicially affect a party's substantive or vested rights.

6.

"Vested rights" is a term used to describe rights that cannot be taken away by retroactive legislation. Retroactive legislation affecting vested rights would constitute the taking of property without due process.

7.

Reviewing "vested rights" cases requires a look beyond the labels to the ingredients that shaped the courts' conclusions. Important factors are: (1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial); (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided); and (3) the nature and strength of the public interest furthered by the legislation.

8.

There can be no vested right in an existing law which precludes its change or repeal as applied to pending litigation.

9.

Because no one has a vested right in stalking or harassing anyone, the 2012 amendment to the Protection from Stalking Act that allows extensions of final protection

from stalking orders beyond two years is procedural and remedial in nature, does not impact any vested rights, and therefore is to be applied retroactively to existing orders.

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Opinion filed September19, 2014. Affirmed.

*Dan M. McCulley*, of Konza Law, L.L.C., of Manhattan, for appellant.

No appearances by appellee.

Before POWELL, P.J., MCANANY, J., and BUKATY, S.J.

POWELL, J.:  In this appeal, we are called upon to answer the question of whether the 2012 amendment to the Protection from Stalking Act (Act), K.S.A. 60-31a01 *et seq.*, that allows more than one extension to existing protection from stalking (PFS) orders, applies retroactively to orders current at the time of the amendment. See L. 2012, ch. 138, sec. 7. In the present case, Chad Dester appeals the district court's second extension of a final PFS order in favor of Melissa Dester. Chad claims the district court did not have jurisdiction to enter a second extension as the PFS statute in effect at the time Melissa filed her PFS petition did not allow for a second extension. Melissa did not file an appellate brief.

Because we find: (1) The provisions of the Act are to be liberally construed to protect victims of stalking; (2) the relevant amendments to the Act extend the remedies in the event stalking is proven; (3) the 2012 amendments to the Act have retroactive application to pending PFS actions; and (4) the retroactive application of these amendments does not violate Chad's due process rights as he does not have a vested right which is implicated by the retroactive effect of the amendments, we affirm the district court.

3

FACTUAL AND PROCEDURAL HISTORY

Melissa and Chad divorced after 6 years of marriage. On November 3, 2011, nearly a month after she had filed for divorce, Melissa filed a petition in the Dickinson County District Court seeking a PFS order for the parties' minor daughter and herself against Chad. The petition alleged two specific incidents of stalking:  first, Chad had called Melissa's cell phone 58 times between 11:07 p.m. on November 1, 2011, to 5:01 a.m. on November 2, 2011; and second, Chad had called Melissa's cell and work phone 26 times around noon the following day. Melissa also alleged that Chad had kicked her car while she and their daughter were driving away and he had pulled a gun on her on more than one occasion. After granting a temporary order, the district court conducted an evidentiary hearing on November 15, 2011, and then issued a final PFS order.

On November 1, 2012, Melissa filed a motion to extend the PFS order for an additional year pursuant to K.S.A. 2012 Supp. 60-31a06(c). The district court conducted a hearing on the motion and extended the November 15, 2011, final PFS order for another year, or until November 15, 2013.

On November 5, 2013, Melissa filed a second motion to extend the PFS order for an additional year pursuant to K.S.A. 2013 Supp. 60-31a06(c). The district court again conducted a hearing, and, as had occurred at the two prior hearings, Melissa appeared pro se while Chad appeared with counsel. Chad's counsel argued the district court lacked jurisdiction to extend the final PFS order for another year because the 2011 version of K.S.A. 60-31a06(b) was applicable, which limited Melissa to one extension of the final order, not the 2012 amendment which allowed for additional extensions. The court disagreed with counsel and extended the November 15, 2011, final PFS order for another year, or until November 15, 2014.

Chad timely appeals.

## DID THE DISTRICT COURT HAVE AUTHORITY
## TO EXTEND THE PFS ORDER FOR ANOTHER YEAR?

Chad argues the district court did not have jurisdiction to grant a second extension of the final PFS order. He claims the 2011 version of K.S.A. 60-31a06, in effect at the time Melissa filed her PFS petition, limited the judge's authority to extend a final PFS order for *up to one additional year*, not two. In 2012, the legislature revised the language regarding extensions of final PFS orders, replacing the language "for one additional year" with "an additional year." K.S.A. 2012 Supp. 60-31a06(c). Chad claims this amendment does not apply retroactively to the final PFS order entered on November 15, 2011, because it affects his substantive rights of freedom of speech and freedom of movement. Thus, the question on appeal is whether an intervening statutory amendment to the Act applies to a second extension of a final PFS order that was entered prior to the amendment. Chad does not challenge the sufficiency of the evidence to support the second extension of the final PFS order.

*Standard of Review*

Interpretation of a statute is a question of law over which appellate courts exercise unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013). "The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained." *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013).

*Analysis*

The Act provides that it is to be liberally construed to protect victims of stalking and to facilitate access to judicial protection for those victims, whether they are represented by counsel or proceeding pro se. K.S.A. 60-31a01(b); see also *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007) (stalking act construed liberally to protect victims). The district court granted a final PFS order on November 15, 2011. At that time, the Act read in pertinent part:

> "(b) A protection from stalking order shall remain in effect until modified or dismissed by the court and shall be for a fixed period of time not to exceed one year, except that, on motion of the plaintiff, such period may be extended for one additional year. Before the expiration of an order for protection from stalking, a victim, or a parent on behalf of the victim, may request an *extension of the protection from stalking order for up to one additional year* on showing of continuing threat of stalking." (Emphasis added.) K.S.A. 2011 Supp. 60-31a06(b).

In 2012, the legislature, *inter alia*, revised subsection (b) and inserted subsections (c) and (d). K.S.A. 2012 Supp. 60-31a06 read in pertinent part:

> "(b) A protection from stalking order shall remain in effect until modified or dismissed by the court and shall be for a fixed period of time not to exceed one year except as provided in subsection (c) and (d).

> "(c) Upon motion of the plaintiff the court may extend the order *for an additional year*.

> "(d) Upon verified motion of the plaintiff and after the defendant has been personally served with a copy of the motion and has had an opportunity to present evidence and cross-examine witnesses at a hearing on the motion, if the court determines by a preponderance of the evidence that the defendant has violated a valid protection order or (A) has previously violated a valid protection order, or (B) has been convicted of

6

a person felony or any conspiracy, criminal solicitation or attempt thereof, under the laws of Kansas or the laws of any other jurisdiction which are substantially similar to such person felony, committed against the plaintiff or any member of the plaintiff's household, the court shall extend a protective order for not less than two additional years and up to a period of time not to exceed the lifetime of the defendant. No service fee shall be required for a motion filed pursuant to this subsection." (Emphasis added.)

Chad argues the revised statute does not apply to the final PFS order because of the presumption that statutory amendments only apply prospectively. He also argues that even if the amendments to the Act do have retroactive effect, they could not in this particular case as they affect his vested and substantial rights to free speech and freedom of movement.

To determine whether a statute applies retroactively or prospectively, the general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the legislature intended the statute to operate retrospectively or (2) the change is procedural or remedial in nature, not substantive. See *Jones v. Garrett*, 192 Kan. 109, 115, 386 P.2d 194 (1963). Unfortunately, the legislature did not expressly indicate whether the 2012 amendments to the Act were retroactive. Thus, we must determine whether the 2012 changes to K.S.A. 60-31a06 are procedural or substantive.

Procedural laws deal with "'the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights.' [Citation omitted.] Substantive laws establish the 'rights and duties of parties.' [Citation omitted.]" *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 191, 883 P.2d 1177 (1994). "There is no vested right in any particular remedy or method of procedure." *Garrett*, 192 Kan. 109, Syl. ¶ 6.

When evaluating the 2012 amendments to the Act, it appears the revisions do not create a new right or eliminate an existing right but, instead, proscribe a method of

enforcing a previously existing right, *i.e.*, the right not to be stalked. *Cf. Halley v. Barnabe*, 271 Kan. 652, 664, 24 P.3d 140 (2001) (revised statute authorizing derivative actions by members is procedural as members have no right to protection from claims for breach of limited liability company operating agreement). Since the amendments at issue deal with the remedies portion of the Act, the part which sets out the type of relief a victim of stalking may obtain from the court and the procedure for doing so, we think the amendments are procedural or remedial in nature.

However, even if the amendments are procedural or remedial, they may not be applied retrospectively if they would prejudicially affect a party's substantive or vested rights. *Kelly v. VinZant*, 287 Kan. 509, 521, 197 P.3d 803 (2008). "'Vested rights' is a term that is used to describe rights that cannot be taken away by retroactive legislation. [Citation omitted.] Retroactive legislation affecting vested rights would constitute the taking of property without due process. [Citation omitted.]" *Gardner v. Gardner*, 22 Kan. App. 2d 314, 317, 916 P.2d 43, *rev. denied* 260 Kan. 992 (1996). However, as our Supreme Court has observed: "The determination of whether a statute affects a 'vested right' is rarely straightforward." *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 221, 73 P.3d 753 (2003).

> "'Reviewing "vested rights" cases requires a look beyond the labels to the ingredients which shaped the courts' conclusions. Important factors are: (1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial), (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation.'" 276 Kan. at 222 (quoting *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 369, 892 P.2d 497 [1995]).

Significantly, Chad does not make the argument that the restrictions to his speech and freedom of movement contained in the original final PFS order violate his substantial rights. See *Smith v. Martens*, 279 Kan. 242, 256, 106 P.3d 28 (2005) (stalking act

"sufficiently tailored [to] not substantially infringe upon speech protected by the First Amendment"). Instead, the gravamen of Chad's argument is that he somehow has a vested right in not having a stalking order imposed upon him for another year. However, our Supreme Court has rejected this argument by stating: "There can be no vested right in an existing law which precludes its change or repeal as applied to pending litigation." *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, 473, 618 P.2d 778 (1980); see also *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n*, 29 Kan. App. 2d 414, 423, 29 P.3d 424 (2001) ("[A] mere expectancy of future benefit, . . . founded on anticipated continuance of existing laws, does not constitute a vested right.").

When applying the factors set forth in *Owen Lumber*, 276 Kan. at 222, Chad simply does not have a vested right in stalking or harassing anyone, nor does he have a vested right in not having a PFS order entered against him for an additional year. The limited restrictions on Chad's freedom of speech and movement are narrowly tailored under the Act and are not unlawful. Also, the amendments, which simply allow a protective order to be continued beyond the original 2-year limitation, are minimally restrictive when compared to the public interest at stake—the need to protect victims of stalking. Such a conclusion comports with the purpose of the Act, which "shall be liberally construed to protect victims of stalking and to facilitate access to judicial protection for stalking victims." K.S.A. 60-31a01(b).

Accordingly, we conclude the revised statute is remedial and procedural, implicates no vested rights, and therefore applies retroactively to PFS orders in existence at the time the amendments were adopted. See *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 540, 957 P.2d 473 (1998) (citing *Rios*, 256 Kan. at 191) (general rule is that all actions subject to new procedure whether they accrued before or after change in the law and whether or not suit had been instituted).

Affirmed.