NOT DESIGNATED FOR PUBLICATION

No. 128,775

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

C.J.W.,
*Appellee*,

v.

D.S.M.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Linn District Court; ANDREA PURVIS, judge. Submitted without oral argument. Opinion filed April 3, 2026. Affirmed.

*Ronald P. Wood*, of The Law Offices of Ronald P. Wood, LLC, of Overland Park, for appellant.

No appearance by appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

CLINE, J.: D.S.M. appeals the protection from stalking (PFS) order entered against him under K.S.A. 60-31a01, based on the sufficiency of the evidence to support the order.

Under the Protection from Stalking, Sexual Assault, or Human Trafficking Act, K.S.A. 60-31a01 et seq. (the Act), the district court may enter a temporary order of relief, upon good cause shown, "as it deems necessary to protect the victim from being stalked . . . . Temporary orders may be granted ex parte on presentation of a verified petition by the victim supporting a prima facie case of stalking." K.S.A. 60-31a05(b).

1

"'Stalking'" is defined under the Act as the "intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 60-31a02(d). "'Harassment'" is defined as "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 60-31a02(d)(1). To establish a "'[c]ourse of conduct'" requires a showing of "two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 60-31a02(d)(2).

*Factual and Procedural Background*

C.J.W. filed a petition for a PFS order against D.S.M. In that petition, C.J.W. alleged that D.S.M. pulled a gun on him at his automobile repair shop and threatened to kill him over a relationship C.J.W. was having with D.S.M.'s wife. C.J.W. alleged D.S.M. was arrested for aggravated assault over the incident and, after bonding out, D.S.M. came back to the shop twice in one day and again two other days. C.J.W. alleged D.S.M. entered the building or was in the parking lot for several minutes before leaving on these occasions. C.J.W. claimed he feared for his safety if he did not receive the protection order. The magistrate court entered a temporary PFS order and scheduled the matter for hearing.

At the evidentiary hearing, C.J.W. said at the time of the occurrences he ran an automobile repair shop on property he leased from D.S.M. C.J.W. said D.S.M. pulled a gun on him at his repair shop and confronted him about sleeping with his wife. After that happened, C.J.W. testified D.S.M. would "frequently" show up to C.J.W.'s repair shop and go through C.J.W.'s personal files. C.J.W. said because of D.S.M.'s behavior, he lost customers because he felt he had to leave when D.S.M. showed up at his shop. C.J.W. also said he could not bring his children to his shop because he was afraid of what might happen to them when they were there. On both direct and cross-examination, C.J.W.

2

confirmed he was still in a relationship with D.S.M.'s wife and therefore still believed he needed the PFS order, even though he had moved his repair shop to a different location by that time.

When D.S.M. testified, he offered different reasons for being on the property. And while he admitted carrying a gun, he denied threatening C.J.W. with it. D.S.M. claimed he was on the property where C.J.W.'s repair shop was located because he owned the building. But he said he stayed in another part of the building during these visits and did not have contact with C.J.W. when he was there.

The magistrate judge ultimately entered a final PFS order against D.S.M. after finding C.J.W. had proven the allegations of stalking by a preponderance of the evidence. D.S.M. appealed the magistrate judge's PFS order to the district court, who affirmed the order.

*Appeal*

D.S.M. asserts that there was insufficient evidence presented at the hearing to support the elements of stalking. While he continues to deny threatening C.J.W. with a gun, he focuses his argument on the statute's requirement of a second act for there to be a "course of conduct." That is, he contends there was no evidence presented of a second act of intentional harassment of C.J.W. D.S.M. claims he had a legitimate reason to be on the property and there was no evidence he engaged in a second act which caused C.J.W. to be in reasonable fear for his safety.

In a challenge to the sufficiency of the evidence supporting a PFS order, appellate courts review the district court's factual findings for substantial competent evidence, then determine whether those findings are sufficient to support the district court's conclusions of law. *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007). We view

the evidence in the light most favorable to the prevailing party. 37 Kan. App. 2d at 736. And when reviewing a district court's factual findings, appellate courts do not reweigh evidence or assess witness credibility. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Review of the district court's conclusions of law is de novo. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

The Legislature mandated that the Act is to be "liberally construed to protect victims of stalking." K.S.A. 60-31a01(b); see *Dester v. Dester*, 50 Kan. App. 2d 914, Syl. ¶ 1, 335 P.3d 119 (2014). While there was conflicting evidence presented about what occurred between D.S.M. and C.J.W., we do not reweigh this evidence on appeal. The magistrate judge observed all the witnesses' testimony and was in the best position to judge the credibility of that testimony. C.J.W. testified that D.S.M. threatened him with a gun and, after that, continued to show up at his workplace, going through his personnel files and waiting in the parking lot. Based on this behavior, C.J.W. testified he was afraid of D.S.M. and afraid to bring his children to work. This testimony is sufficient to support the magistrate judge's and district court's findings that C.J.W. established the statutory requirements for a PFS order.

Affirmed.